**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **JOHN LAWLESS,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 11-7306** |
| | : | |
| **DELAWARE RIVER PORT** | : | |
| **AUTHORITY,** | : | |
| | : | |
| **Defendant.** | : | |

_____

**DuBois, J.**                                                                                    **January 15, 2013**

### M E M O R A N D U M

### I.      INTRODUCTION

Plaintiff John Lawless claims, <u>inter alia</u>, that his former employer, the Delaware River Port Authority ("Port Authority"), violated the Americans with Disabilities Act when it terminated Lawless. During depositions of several Commissioners and other representatives of the Port Authority, defense counsel objected to certain testimony on attorney-client privilege grounds. Presently before the Court is Lawless's Motion to Compel that testimony. For the reasons set forth below, the Court denies the motion.

### II.      BACKGROUND

Lawless was the Corporate Secretary of the Port Authority. He was terminated when the Board of Commissioners passed a resolution consolidating the Corporate Secretary position with the Office of General Counsel. (Mot. Ex. 1 at 8.) Lawless claims, <u>inter alia</u>, that his termination was unlawfully motivated by his disabilities – alcoholism and Post Traumatic Stress Disorder, both arising from an incident when he was twelve-years old in which he was held hostage at gunpoint. (Compl. at ¶¶10-13, 64-70.)

The resolution at issue was adopted at a meeting of the Board of Commissioners of the Port Authority. (Mot. Ex. 1 at 8.) While most of the meeting was public, the Board went into closed "Executive Session" to discuss Lawless's termination. (Id.) Former General Counsel Richard Brown and Port Authority attorneys from Duane Morris and Archer & Greiner were present at the Executive Session in addition to Port Authority Commissioners and executives. (Mot. Ex. 3, Estey Dep. at 84-85.)

During discovery depositions, defense counsel objected to certain testimony regarding what was said at the closed session on attorney-client privilege grounds. Lawless seeks to compel that testimony.

## III.    LEGAL STANDARD

Under Third Circuit law, attorney-client privilege contains the following elements:

(1) the asserted holder of the privilege is or sought to become a client;
(2) the person to whom the communication was made
    (a) is a member of the bar of a court, or his or her subordinate, and
    (b) in connection with this communication is acting as a lawyer;
(3) the communication relates to a fact of which the attorney was informed
    (a) by his client,
    (b) without the presence of strangers,
    (c) for the purpose of securing primarily either
        (i)   an opinion of law,
        (ii)  legal services, or
        (iii) assistance in some legal proceeding, and
    (d) not for the purpose of committing a crime or tort; and
(4) the privilege has been claimed and not waived by the client.

Montgomery County v. MicroVote Corp., 175 F.3d 296, 301 (3d Cir. 1999). The privilege covers communications made by the client as well as the attorney and it "exists to protect not only the giving of professional advice to those who can act on it but also the giving of

information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390 (1981). "The central inquiry is whether the communication was made by a client to an attorney for the purpose of obtaining legal advice." Sampson v. School Dist. of Lancaster, 262 F.R.D. 469, 474 (E.D. Pa. 2008) (quoting In re Spalding Sports Worldwide, 203 F.3d 800, 805 (Fed. Cir. 2000)).

## IV. DISCUSSION

Lawless argues that the testimony should be compelled because (A) the attorney-client privilege does not apply to parts of the discussions at the Executive Session, and (B) even if it does apply, it has been waived.

### A. Whether the Attorney-Client Privilege Applies

Whether statements made during the Executive Session are protected by attorney-client privilege turns on the nature of the discussions at that meeting. Lawless argues that some aspects of the Executive Session may not have involved seeking legal advice. Moreover, he asserts that the defense asserted such broad objections during discovery depositions that it is impossible to determine whether statements were made that are not covered by privilege. The Port Authority argues that everything said during the Executive Session was in the context of seeking legal advice and is therefore non-discoverable.

The Court agrees with the Port Authority that everything stated in the Executive Session is privileged. CEO John Matheussen, when asked at his deposition whether "everything that was said in the meeting involved . . . the request for legal advice and the conveying of legal advice," responded, "I don't recall anything else other than that." (Resp. Ex. A, Matheussen Dep. at 261.) When pressed further on whether he recalled "Commissioners expressing their opinion without

3

soliciting legal advice," Matheussen responded, "I recall attorneys responding to whether they were questions or statements made by the Commissioners both pro or con on the issue." (Id.)

Similarly, former General Counsel Richard Brown, when asked whether any non-legal issues were discussed, stated that the meeting "substantially" concerned the legal issues and that the "legal issues are what sticks out in [his] mind as what was going on in that meeting." (Resp. Ex. G, Brown Dep. at 204.) He further stated that what happened at the meeting was presenting a set of facts to the lawyers so that they could make a legal judgment. (Id.)

Lawless claims that defense counsel's objections to deposition questions were so broad that he was unable to ascertain whether any discussions at the Executive Session are not covered by attorney-client privilege. The Court rejects that argument. In Matheussen's and Brown's depositions, defense counsel initially objected to questions concerning whether there were non-legal discussions in the Executive Session. (Resp. Ex. A, Matheussen Dep. at 257-60; Resp. Ex. G, Brown Dep. at 197-204.) However, after brief conversations between the attorneys, Matheussen and Brown were permitted to answer without objection. (Resp. Ex. A, Matheussen Dep. at 261; Resp. Ex. G, Brown Dep. at 204). As noted above, they both stated that the entire closed session concerning presenting the legal issues to counsel.

The Court concludes that the discussions at the Executive Session were all related to obtaining legal advice. Thus, the attorney-client privilege applies to everything said at the Executive Session.

B.      Whether the Attorney-Client Privilege Was Waived

Lawless also argues that, even if the attorney-client privilege applies, it has been waived. This assertion is based on the following exchange in Matheusen's deposition:

Q.  Do you recall whether any of the Commissioners expressed their own views as to whether they thought that the termination of Mr. Lawless was appropriate?

A.  I recall that there were questions as to whether or not – how it was done, why it was done.  There were probably some Commissioners who expressed reservations.

(Resp. Ex. A, Matheussen Dep. at 260.)  Lawless asserts that by making this statement at the deposition, "the Authority has waived any privilege that would otherwise attach to the expression of those reservations."  (Mot. at 8.)  He believes that he "should be allowed to inquire as to what the nature of those objections were. . . ."  (Id.)  The Court disagrees.

"[I]t is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived."  Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991).  As the Court has ruled, the discussions at the Executive Session were all related to obtaining legal advice.  Accordingly, Commissioners' reservations about terminating Lawless is a privileged communication that Matheussen's disclosed.  The Court therefore concludes that privilege has been waived with respect to the fact "[t]here were probably some Commissioners who expressed reservations" about terminating Lawless.

However, Matheussen's statement does not warrant any further disclosure.  Pursuant to Federal Rule of Evidence 502(a), when a party discloses privileged material, the waiver extends to undisclosed material only when: "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  The Explanatory Note to Rule 502 explains that such an extension of a waiver is "reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading

presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note (revised Nov. 28, 2007). The Explanatory Note further states that extending the waiver is "limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Id.

The principle expressed in the Explanatory Note is consistent with the pre-Rule 502 Westinghouse decision. See Shionogi Pharma, Inc. v. Mylan Pharmaceuticals, Inc., No. 10-1077, 2011 WL 6651274, at *4 n.1 (D. Del. Dec. 21, 2011) (Baylson, J.) (discussing the consistency between the Explanatory Note and Westinghouse). In Westinghouse, the Third Circuit stated, "When a party discloses a portion of otherwise privileged materials while withholding the rest, the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary. If partial waiver does disadvantage the disclosing party's adversary by, for example, allowing the disclosing party to present a one-sided story to the court, the privilege will be waived as to all communications on the same subject." 951 F.2d at 1426 n.12 (internal citations omitted).

The statement that "[t]here were probably some Commissioners who expressed reservations" does not require extending the waiver beyond the statement itself. It added little, if anything, to what was already a matter of record in that the board minutes previously issued state that four Commissioners voted against the resolution which terminated Lawless. (Mot. Ex. 1 at 8.)

Moreover, redeposing the Commissioners who attended the Executive Session, as Lawless requests, is inappropriate. Nothing prevented plaintiff's counsel from asking the Commissioners at their depositions, "Did you have any reservations about terminating Lawless,

and if so, what were they?" In fact, Commissioners Wagner, Dougherty, and Fentress were each asked why they voted against the resolution, and all three responded to the question. (Resp. Ex. C, Fentress Dep. at 27-29; Resp. Ex. D, Dougherty Dep. at 32-35; Resp. Ex. F, Wagner Dep. at 34-36.)

Finally, the Port Authority is not putting forward privileged information in a selective, misleading, and unfair manner so as to present a one-sided story to the Court. If anything, Matheussen's statement hurts the Port Authority's case because it shows that some Commissioners felt that Lawless's termination may not have been justified. See O'Kinsky v. Perrone, 2012 WL 4835316, *2 (E.D. Pa. Oct. 11, 2012) (declining to extended a waiver, in part, because the initial waiver hurt the disclosing party's case.)

The Court thus concludes that Matheussen's statement, while a waiver, does not warrant any further disclosure.

## V. CONCLUSION

For the foregoing reasons, Lawless's Motion to Compel is denied. An appropriate order follows.